# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:13-CV-592-MR
### CRIMINAL CASE NO. 3:09-CR-19-MR

CHARLES ALLEN HALL,⁣)
)
Petitioner,⁣)
vs.⁣)⁣**MEMORANDUM OF**
)⁣**DECISION AND ORDER**
UNITED STATES OF AMERICA,⁣)
)
Respondent.⁣)
_____)

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, [CV Doc. 1];[1] his Memorandum in support of his 2255 Motion, [CV Doc. 1-1]; his Supplemental 2255 Motion, [CV Doc. 2]; his Memorandum in support of his Supplemental 2255 Motion, [CV Doc. 2-1]; and his Motion to Supplement his 2255 Motion. [CV Doc.14]. Petitioner also has filed a Motion to Reconsider Denial of Relief under Johnson v. United States, 135 S. Ct. 2551 (2015). [CV Doc. 23].

_____

[1] Because this Memorandum and Order must reference documents contained in the docket in both Petitioner's civil case and in his criminal case, the Court will cite to documents from Petitioner's civil case with the prefix "CV" and from his criminal case with the prefix "CR."

## PROCEDURAL HISTORY

On October 23, 2013, Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, [CV Doc. 1] and his Memorandum in support of his 2255 Motion, [CV Doc. 1-1]. On March 3, 2014, Petitioner filed his Supplemental 2255 Motion, [CV Doc. 2] and his Memorandum in support of his Supplemental 2255 Motion, [CV Doc. 2-1]. On July 21, 2015, Petitioner filed his Motion to Supplement his 2255 Motion. [CV Doc.14]. The Government filed a Response to Petitioner's first four filings [CV Doc. 11], and Petitioner filed a Reply thereto. [CV Doc. 12]. Petitioner raised several claims in all of these filings. Petitioner's only claim that merited investigation by way of an evidentiary hearing was his ineffective assistance of counsel ("IAC") claim. In that claim, Petitioner asserted that his trial counsel was ineffective by failing adequately to investigate his prior criminal record thereby leading him to trial based upon incomplete or incorrect legal advice. [CV Doc. 15 at 26]. By Order entered August 31, 2015, the Court dismissed all of the Petitioner's claims contained in his various habeas filings with the exception of his IAC claim. [CV Doc. 15].

The Court set an evidentiary hearing for November 24, 2015, on Petitioner's IAC claim [CV Doc. 16] and appointed counsel to assist Petitioner. [Doc. 17]. Petitioner's newly-appointed counsel thereafter filed

two related pre-hearing motions. The first was counsel's unopposed motion to expand her appointment to include representation of the Petitioner with regard to his previously-dismissed claim challenging his sentence enhanced under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA").[2] [CV Doc. 20]. Counsel's second pre-hearing motion requested the Court reconsider its Order dismissing Petitioner's ACCA claim due to a change in circuit precedent.[3] Counsel's second motion asserts that Petitioner's two challenged predicates no longer meet the ACCA's definition of "violent felony": his South Carolina Third Degree Burglary conviction, due to the rationale of United States v. McLeod, 808 F.3d 972 (4th Cir. 2015),[4] and his

---

[2] In his pro se filings, Petitioner had broadly asserted that his ACCA-enhanced sentence was unlawful due to the infirmity of two of his requisite predicates: his conviction for Third Degree Burglary under South Carolina law, and his conviction for Aiding and Abetting Assault with a Firearm on an Officer under North Carolina law. [CV Doc. 14 at 2].

[3] Following the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015) (holding the residual clause of the ACCA void as unconstitutionally vague), the Fourth Circuit decided United States v. Vinson, 794 F.3d 418 (4th Cir. 2015) (herein Vinson I), which construed the mens rea component of North Carolina assault offenses in light of Johnson. Based upon the rationale of Vinson I, this Court dismissed Petitioner's pro se ACCA claim. [CV Doc. 15 at 23]. Subsequent to this Court's dismissal of that claim, the Fourth Circuit withdrew Vinson I and issued a superseding opinion. United States v. Vinson, 805 F.3d 120 (4th Cir. 2015) (herein Vinson II). [CV Doc. 23].

[4] In McLeod, the court held that the statute defining second degree burglary under South Carolina law contained alternative elements and therefore was subject to the modified categorical approach when considering whether a conviction under that statute could serve as an ACCA predicate. Id. at 976. Like Vinson II, McLeod was handed down subsequent to this Court's dismissal of Petitioner's ACCA claim.

North Carolina Aiding and Abetting Assault with a Firearm on an Officer ("AWF") conviction, due to the rationale of <u>Vinson II</u>.[5]  [<u>Id</u>. at 2].

On November 24, 2015, the Court held an evidentiary hearing in this matter.  [CV Docket Sheet at 4].  Before receiving any evidence, the Court granted the two pre-hearing motions filed by Petitioner's counsel.  In so doing, the Court expanded counsel's representation to include Petitioner's previously-dismissed ACCA claim, and agreed to reconsider that part of its previous Order dismissing the ACCA claim to the extent that such dismissal might now be at odds with <u>McLeod</u> and/or <u>Vinson II</u>.

Following the evidentiary hearing, the Court established a supplemental briefing schedule on the issue of Petitioner's ACCA claim.  The parties filed their supplemental briefs in January, 2016.  [CV Docs. 24 and 25].  Also in January of this year, the Supreme Court granted review in the case of <u>Mathis v. United States</u>, 786 F.3d 1068 (8th Cir. 2015), <u>petition for cert. granted</u>, 136 S. Ct. 894 (Jan. 19, 2016) (presenting question of whether a predicate prior conviction under the ACCA must qualify as such under the

---

[5] To add greater procedural complexity to this case, shortly before the Fourth Circuit published <u>Vinson II</u> the Supreme Court granted its Writ of Certiorari to the First Circuit with respect to a case raising in that circuit an issue very similar to that which would be resolved four days later by the Fourth Circuit in <u>Vinson II</u>.  <u>United States v. Voisine</u>, 778 F.3d 176 (1st Cir. 2015), <u>petition for cert. granted</u>, 136 S. Ct. 386 (Oct. 30, 2015) (presenting question of whether a misdemeanor crime with the <u>mens rea</u> of recklessness qualifies as a "misdemeanor crime of domestic violence" as defined by 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9)).

elements of the offense pursuant to the categorical approach or whether the modified categorical approach may be employed to consider the separate statutory definitional provisions that merely establish the means by which referenced elements may be satisfied). Noting that Petitioner's burglary conviction under South Carolina law and, therefore, the decision in McLeod both could potentially be affected by the Supreme Court's decision in Mathis; and noting that Petitioner's AWF conviction under North Carolina law and, therefore, the decision in Vinson II both could potentially be affected by the Supreme Court's decision in Voisine, this Court reserved ruling on Petitioner's ACCA claim until the Supreme Court decided Mathis and Voisine. On June 23, 2016, the Court issued it opinion in Mathis v United States, 136 S. Ct. 2243 (2016), and followed four days later with its opinion in Voisine v United States, 136 S. Ct. 2272 (2016).

The Court will not recount the extensive factual and procedural history of the Petitioner's criminal case as the same is set forth in its prior Order filed in this matter. [CV Doc. 15 at 2-9]. In short, at Petitioner's sentencing hearing, the Court concluded that three of Petitioner's prior convictions met the "violent felony"[6] requirements of the ACCA: (1) AWF and (2) Breaking or

---

[6] 18 U.S.C. § 924(e)(2)(B) of the Armed Career Criminal Act defines "violent felony" as follows: "any crime punishable by imprisonment for a term exceeding one year ... that —

Entering under North Carolina law, and (3) Third Degree Burglary under South Carolina law. [CR Doc. 66 at 7]. The Court, therefore, imposed an ACCA-enhanced imprisonment term of 188 months. [CR Doc. 71].

Petitioner's IAC claim is premised upon his assertion that his trial counsel erroneously advised him that he was not subject to an ACCA-enhanced sentence because she failed adequately to investigate his prior criminal record. The result of such ineffective legal assistance, according to the Petitioner, was that he proceeded to trial based upon incomplete or incorrect legal advice and received a more lengthy sentence than he otherwise would have received had he entered a plea of guilty. In his motion to reconsider, Petitioner asks the Court to reconsider its conclusions that his prior North Carolina AWF conviction and South Carolina burglary conviction constitute violent felonies under the ACCA after <u>Johnson</u>. Petitioner submits these convictions no longer qualify as such.

---

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." <u>Id.</u> (emphasis added). The so-called residual clause, discussed <u>infra</u>, is the italicized phrase at the end of subsection 924(e)(2)(B)(ii) which the Supreme Court has held to be unconstitutionally vague.

## STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion is not dismissed after this initial review, the Court must direct the Government to respond. <u>Id.</u> The Court must review the Government's answer, if any, in order to determine whether an evidentiary hearing is warranted under Rule 8(a). Having considered the record in this matter, the Court previously found that Petitioner was not entitled to relief on any claim with the exception of his IAC claim. The Court concluded, therefore, that all of Petitioner's claims, except his IAC claim, could be resolved without an evidentiary hearing. <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970). The Court conducted an evidentiary hearing on Petitioner's IAC claim and sets forth its findings below.

As for Petitioner's reconsideration motion, Federal Rule of Civil Procedure 54(b) provides that interlocutory orders that resolve fewer than all claims are "subject to revision at any time before the entry of [final] judgment." The power to reconsider any such order is committed to the sound discretion of the district court. <u>American Canoe Ass'n v. Murphy</u>

Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003) (citing Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983)).

## DISCUSSION

The potential relief available to the Petitioner on his ACCA claim exceeds the potential relief Petitioner would enjoy if he were to prevail on his IAC claim. Therefore, the Court will first address Petitioner's contention that two of his prior convictions are constitutionally insufficient to support his current ACCA-enhanced sentence. Should the Court determine that even one such predicate is infirm, Petitioner's ACCA-enhanced sentence is unlawful,[7] he is entitled to be resentenced, and his IAC claim becomes moot. If the Court determines that both of Petitioner's challenged convictions remain valid predicates, however, the Court will then address whether Petitioner is entitled to any relief based upon his allegations that his trial counsel's legal assistance was constitutionally ineffective.

---

[7] Petitioner received a sentence of 188 months, greater than the minimum of 180 months mandated by the ACCA. [CR Doc. 71 at 2]. If Petitioner is not subject to an ACCA-enhanced sentence, then he cannot receive a sentence in excess of 120 months, the statutory maximum permissible for his offense of conviction. Therefore, the question of whether Petitioner received an illegal sentence will be an appellate determination as that question hinges upon a proper resolution of whether either of Petitioner's challenged predicates qualify as a "violent felony" under the ACCA.

## I.     Petitioner's ACCA Claim.

### A.     Aiding and Abetting Assault with a Firearm on an Officer.

The Court previously determined that Petitioner's AWF conviction remained an ACCA predicate even after <u>Johnson</u>.  [CV Doc. 15 at 19-23]. The Court relied in part on <u>Vinson I</u>, which was later withdrawn by the Fourth Circuit and replaced by <u>Vinson II</u>.   As noted above, <u>Vinson II</u> was decided after this Court issued its Order dismissing Petitioner's ACCA claim. Accordingly, reexamining Petitioner's AWF conviction in light of <u>Vinson II</u> is warranted.

In Mr. Vinson's case, the Fourth Circuit was presented with the issue of whether a misdemeanor conviction for assault on a female under N.C. Gen. Stat. § 14-33(c)(2) satisfies the "misdemeanor crime of domestic violence" element contained in 18 U.S.C. § 922(g)(9).  More precisely, the appellate court concluded that the issue it had to determine, in accordance with the categorical approach, was whether the *use* or *attempted use* of physical force was an element of Vinson's underlying North Carolina assault conviction. <u>See</u> 18 U.S.C. § 921(a)(33)(A)(ii) (the "misdemeanor crime of domestic violence" referenced in 18 U.S.C. § 922(g)(9), must have, as an element, "the use or attempted use of physical force" against the victim).

To begin its analysis, the Fourth Circuit looked to Supreme Court precedent which, in evaluating a defendant's mental state in a similar context, proposed that "the most common employment of the word 'use' connotes the intentional availment of force" as opposed to "negligent or merely accidental conduct[.]" Vinson II, 805 F.3d at 125 (quoting Leocal v. Ashcroft, 543 U.S. 1, 9 (2004)). With this basis, the Fourth Circuit noted generally that North Carolina's case law establishes that a defendant must act intentionally to be guilty of assault. "[A]n assault is an intentional attempt, by violence, to do injury to the person of another." Vinson II, 805 F.3d at 125-26 (citing State v. Britt, 270 N.C. 416, 419, 154 S.E.2d 519, 521 (1967)). Upon closer inspection, however, the Fourth Circuit observed that North Carolina case law reveals that "the requisite intent can be established through proof of 'culpable negligence.'" Vinson II, 805 F.3d at 126 (citing State v. Jones, 353 N.C. 159, 164-65, 538 S.E.2d 917, 923 (2000) (holding "actual intent" may be implied from proof of "culpable or criminal negligence")). For this reason, the Fourth Circuit concluded that North Carolina's misdemeanor assault on a female offense does not categorically fall within the purview of 18 U.S.C. § 922(g)(9) because the mens rea element of this crime is not sufficient to satisfy the required degree of intent demanded by 18 U.S.C. § 921(a)(33)(A)(ii).

On June 27, 2016, the Supreme Court issued its opinion in <u>Voisine</u>. The issue presented in <u>Voisine</u> was very nearly the same as that resolved by the Fourth Circuit in <u>Vinson II</u>, namely, "whether § 922(g)(9) applies to reckless assaults, as it does to knowing or intentional ones." <u>Voisine</u>, 136 S. Ct. at 2278. Answering the issue in the affirmative, the Court explained, <u>inter alia</u>, that the statutory text led to no other conclusion but that § 922(g)(9) applies when the underlying domestic assault is the product of a volitional act, in whatever form, as opposed to an accidental one.

The Court noted that "[n]othing in the word 'use' — which is the only statutory language either party thinks relevant — indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults." <u>Id.</u> The noun "use," according to the Court, means the act of employing something, or putting something into service, which under § 921(a)(33)(A)(ii) is "physical force." <u>Id.</u> As the Court further explained,

> But the word "use" does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so. Or, otherwise said, that word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct.

<u>Id.</u> at 2279. The Court also explained that nothing in its <u>Leocal</u> decision, which the Fourth Circuit relied upon, suggests a different conclusion.

According to the Supreme Court, its <u>Leocal</u> decision addressed a statutory definition similar to § 921(a)(33)(A), there, "the use ... of physical force against the person or property of another" found in 18 U.S.C. § 16, and held that such provision excludes "merely accidental" conduct. <u>Voisine</u>, 136 S. Ct. at 2279. The text of the § 921(a)(33)(A)(ii), therefore, applies to all but accidental assaults prosecuted under § 922(g)(9). In light of <u>Voisine</u>, the analysis undergirding <u>Vinson II</u> may well be infirm.

In his supplemental brief, Petitioner asserts that <u>Vinson II</u> resolves the issue of his AWF conviction favorably to him. [CV Doc. 25 at 5-6]. <u>Vinson II</u>, however, provides no relief to the Petitioner. In <u>Vinson II</u>, the Fourth Circuit construed the misdemeanor assault offense set forth in N.C. Gen. Stat. § 14-33(c)(2) whereas the Petitioner was convicted of violating the felony assault with a firearm offense contained in N.C. Gen. Stat. § 14-34.2. Petitioner's predicate North Carolina offense is narrower than Mr. Vinson's predicate. To be convicted of Petitioner's offense, North Carolina requires that the assault be accomplished *with a firearm*. To the extent that <u>Vinson II</u> continues to suggest that the question of a defendant's mental state[8] remains a

_____

[8] The Fourth Circuit in <u>Vinson II</u> did not disclaim the divisibility analysis it crafted in <u>Vinson I</u>, but simply "[a]ssum[ed] without deciding that the assault formulations amount to alternate elements creating separate forms of the [misdemeanor] offense[.]" <u>Vinson II</u>, 805 F.3d at 125. Within that framework, a violation of N.C. Gen. Stat. § 14-34.2 would be a generic "attempted battery" type of assault which includes the requisite intent. Because the Court is issuing a Certificate of Appealability on this issue, the Fourth Circuit will have

consideration for the Court, the Petitioner does not explain or argue how an assault with a firearm can be accomplished other than with true intent. Further, according to <u>Voisine</u>, a person who commits an assault with a firearm, as the text of North Carolina's AWF offense prohibits, satisfies the force clause of the ACCA. Petitioner's voluntary (as opposed to accidental) commission of an assault accomplished with the employment of a firearm necessarily constitutes "the use, attempted use, or threatened use of physical force against the person of another[.]" 18 U.S.C. § 924(e)(2)(B)(i). For these reasons, Petitioner's AWF conviction remains an ACCA predicate even after <u>Johnson</u>.

B. <u>Third Degree Burglary Predicate</u>.

At the Petitioner's sentencing hearing, the Court determined that Petitioner's South Carolina burglary conviction qualified as an ACCA predicate. [CR Doc. 80 at 17]. On direct appeal, Petitioner argued the Court erred in this regard but the Fourth Circuit disagreed and affirmed this Court's conclusion. [CR Doc. 86 at 19-20]. Petitioner raised the issue again in his habeas filings [CV Docs. 1-1; 2-1; 14], and the Court summarily rejected it because the issue had been fully considered on direct appeal. [CV Doc. 15

_____

the opportunity to reexamine this issue and determine, in light of <u>Mathis</u>, "[w]hether the multiple assault formulations are alternate means or alternate elements" of the offense.

at 11].    Thereafter, Petitioner asked the Court to reconsider its decision regarding this predicate in conjunction with reexamining its denial of Petitioner's ACCA claim in light of <u>Johnson</u>. [CV Doc. 25 at 6]. The government opposes Petitioner's request, contending such conviction is a valid ACCA predicate based on <u>McLeod</u>. [CV Doc. 11 at 10-11]. As noted above, however, the Fourth Circuit decided <u>McLeod</u> after this Court issued its Order dismissing Petitioner's ACCA claim.  Upon reconsideration of this aspect of Petitioner's ACCA claim, and for the reasons that follow, the Court will not disturb is its previous ruling that Petitioner's South Carolina burglary conviction remains a valid ACCA predicate in light of <u>McLeod</u>.

In <u>McLeod</u>, the Fourth Circuit held that South Carolina has defined its burglary offense more broadly than the Supreme Court's definition of generic burglary found in <u>Taylor</u>.[9]    Accordingly, the appellate court employed the modified categorical approach[10] for analyzing Mr. McLeod's South Carolina

---

[9] <u>Taylor v. United States</u>, 495 U.S. 575, 598 (1990) (holding the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime).

[10] The modified categorical approach allows district courts to examine certain court records or documents, typically the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented[,]" to determine whether the defendant was convicted of generic burglary or an alternative form of burglary that would not qualify as a predicate offense. <u>McLeod</u>, 808 F.3d at 975 (citing <u>Shepard v. United States</u>, 544 U.S. 13, 16 (2005)).

burglary predicate challenged under the ACCA.  McLeod, 808 F.3d at 795.

In Petitioner's case, the Shepard-approved documents examined by the

Court disclosed that he was convicted of generic burglary and, therefore, his

conviction was a sound ACCA predicate.  [CR Doc. 69-1].

In the few short months since the decision in McLeod was handed

down, subsequent cases raised the question of whether McLeod was

correctly decided.  See United States v. Lockett, 810 F.3d 1262, 1272 (11th

Cir. 2016) (holding that South Carolina's burglary offense[11] neither meets the

generic definition of burglary established by Taylor, nor is it divisible[12] into

alternative burglary offenses such that it is amenable to the modified

categorical approach pursuant to Shepard); and see Mathis, 136 S. Ct. at

2250 (holding the ACCA cannot support an enhanced sentence under Iowa

law when one of the burglary statute's specified *means* creates a match with

the generic offense but the broader *element* does not).  The separate

---

[11] The appellate panels in McLeod and Lockett were tasked with construing South Carolina's second degree burglary statute, S.C. Code Ann. § 16-11-312.  As noted herein, Petitioner's prior South Carolina conviction is for third degree burglary under S.C. Code Ann. § 16-11-313.  The resolution of this issue is not affected by the language the South Carolina legislature chose when differentiating the degrees between these two burglary offenses.

[12] A statute is "divisible" when it sets out one or more *elements* in the alternative, not when it lists different *means* available to satisfy an essential element. The modified categorical approach can be applied by courts only when dealing with divisible statutes. Descamps v. United States, 133 S. Ct. 2276, 2281 (2013).

rationales underlying McLeod and Lockett are irreconcilable. Given that McLeod is Fourth Circuit precedent and Lockett is not, the Court is bound to follow McLeod. Ultimately, the Fourth Circuit may determine that Mathis supports the analysis of Lockett and the rationale of McLeod has been overruled by implication. Such a decision, however, would be the province of the Court of Appeals. Unless and until the Fourth Circuit takes such action, however, this Court must follow McLeod as binding circuit precedent.

The jurisprudence interpreting Johnson and Descamps is developing so quickly that it makes addressing such issues on reconsideration very difficult. In fact, it may make concluding Johnson cases all but impossible, except where intervening precedent dictates such reconsideration and revision of decisions. Just last week, the Fourth Circuit vacated an ACCA-enhanced sentence on plain error review concluding that a defendant's prior West Virginia burglary convictions did not meet the ACCA definition of "violent felony." United States v. White, --- F.3d ----, No. 15-4096, slip op. at 22 (4th Cir. Sept. 9, 2016). In so concluding, the appellate court, citing Mathis and McLeod, noted that it "need not and [did] not reach the question" of whether the West Virginia statute at issue was divisible because it set forth alternative locational elements. White, slip op. at 22 n.3. That is precisely what is at issue in this matter regarding Petitioner's South Carolina burglary

conviction. Despite the issue being a pure question of law, this Court can address it no further as the Court is directly bound by existing precedent.

For these reasons, the Court will leave its prior determination of this issue undisturbed in light of McLeod. This matter has taken a long and tortured path.  Several developments in the law during the pendency of this matter would appear to be in the Petitioner's favor.  But, as explained herein, they do not add up to any relief for Petitioner. It is for this reason, however, that the Court will grant a Certificate of Appealability both with regard to this issue as well as the issue Petitioner has raised with regard to his prior conviction under N.C. Gen. Stat. § 14-34.2, as these two issues may give the Fourth Circuit the opportunity to reconsider its decisions in McLeod and Vinson II.[13]

---

[13] Since the Court has already waded this far into the Johnson/Mathis/Descamps/Taylor/Shepard swamp, it will take one step further to address what is (or should be) obvious to all:  when formulating sentences involving prior convictions for what may be violent felonies/crimes of violence, this assemblage of case law makes the process nonsensical.  A case in point is the contrast between the present matter and this Court's recent decision in Doe v. United States, 1:16-CV-95-MR.  Both involved the question of whether a prior conviction under South Carolina's burglary statute is a valid ACCA predicate. In Doe, the Shepard-approved documents showed nothing as to the underlying facts of conviction so no ACCA predicate was found. Petitioner herein, however, was convicted of burglary in a South Carolina county where the record-keeper was more meticulous. This determines the difference between a 10-year maximum and a 15-year minimum? In Doe, it made the difference between a Guidelines range of 180 months versus a Guidelines range of 24 to 30 months.  Moreover, the mandated distinctions between "elements" and "means" required by Descamps and Mathis in order to determine whether a count of conviction is "generic" in applying Taylor and Shepard requires the sort of semantic hair-splitting that would make any patent attorney proud.  Decisions controlling the number of years real human beings spend confined in prison are supposed

## II.     Petitioner's Ineffective Assistance of Counsel Claim.

Having reconsidered and reaffirmed its prior decisions that Petitioner's North Carolina AWF conviction and his South Carolina burglary conviction qualify as valid ACCA predicates after <u>Johnson</u>, the Court will next address the Petitioner's pending IAC claim.

Even before filing this action, Petitioner complained about the performance of his trial counsel.  On February 24, 2010, after the jury had convicted the Petitioner but before he was sentenced by the Court, Petitioner wrote a letter to the Court and asserted his trial attorney: (1) did not explain the penalties he faced if he pled guilty versus if he were found guilty following a jury trial; (2) provided erroneous advice regarding the federal definition of a firearm; (3) failed to subpoena certain witnesses at trial and argue such persons were the true owners of the firearms at issue, and (4) failed to review his recorded telephone conversations made from jail.    [CR Doc. 62]. Generally speaking, these are the same allegations Petitioner makes in this action.[14]  [CV Docs. 1 at p. 4; 2 at p. 4].

---

to rest on this?  There must be a better way.  At least this case gives the Court of Appeals the opportunity to provide precedential guidance as to two small parts of this much broader problem.

[14] The Court's previous Order listed eight grounds Petitioner contended supported his IAC claim. [CV Doc. 15 at 23-24]. The substance of these eight grounds originate from the allegations contained in the Petitioner's letter to the Court.

Between the time the Petitioner wrote his letter to the Court and the time Petitioner commenced this action, however, the Petitioner disavowed these ineffectiveness allegations on two separate occasions. The first came immediately following the Court's receipt of Petitioner's letter, upon which the Court referred Petitioner's dispute with his attorney to the Magistrate Judge for a status of counsel hearing.  Following two hearings conducted by the Magistrate Judge, Petitioner agreed that the "situation" between him and his attorney had been resolved. [CR Doc. 84 at 2-3]. The second occasion came at the Petitioner's sentencing hearing.  There, the Petitioner stated twice that his attorney's assistance was not faulty at all and that he wished to apologize to her.

> A few months ago you got a letter from me about my lawyer. I'm pretty sure you -- I wrote you a letter. And after I got to studying, I finally found out it wasn't her performance at all, it's just that I was confusing. I have to -- owe her and apologize for her.
>
> * * * * * * * * *
>
> Like I said, I owe my lawyer an apology for the letter she wrote -- I wrote against her. Because it's not her performance. I thought she was just pretty instead of a lawyer. But she actually's -- she's a decent lawyer, you know.

[CR Doc. 80 at 27-8; 29].  Despite recanting the basis for his IAC claim, the Petitioner realleged in his habeas pleadings filed herein the same broad accusations of ineffectiveness he first set forth in his letter to the Court. Thereafter, the Court carefully reviewed all of the Petitioner's assertions and

determined that only one merited further development by way of an evidentiary hearing. [CV Doc. 15].

On November 24, 2015, the Court convened an evidentiary hearing on Petitioner's IAC claim during which the Petitioner and his trial counsel were both permitted to testify. Prior to presenting any evidence, Petitioner's counsel notified the Court that Petitioner's goal in pursuing his IAC claim was not to seek the reversal of his conviction and reopen the case for a new trial, nor was it to seek the vacatur of his conviction and permit him to tender a guilty plea. The Petitioner, according to his habeas counsel, was simply seeking to be resentenced either without the ACCA enhancement, or at the very least, resentenced under the ACCA to the 180-month minimum term permitted by law. In that regard, Petitioner's counsel conceded that the only issue the Court was required to consider in resolving the IAC claim was the one identified by the Court in its previous Order: whether Petitioner's trial counsel "may have failed to investigate his past record adequately and thereby led him to trial based upon faulty or inadequate legal advice." [CV Doc. 15 at 26]. Therefore, the Court will discuss only this issue underlying the Petitioner's IAC claim.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. U.S.

CONST. art. VI.  In order to prevail on an ineffective assistance of counsel clam, a petitioner has the burden of establishing that: (1) defense counsel's performance was deficient, in that counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) the petitioner was prejudiced thereby, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

To establish deficient performance by counsel, a petitioner must overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  As the Strickland Court cautioned:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689 (citation omitted). In the end, to prevail on a claim of ineffective assistance, a petitioner has the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

The Supreme Court has long recognized that the right to effective assistance of counsel extends to the plea negotiation process. Padilla v. Kentucky, 559 U.S. 356, 373 (2010); McMann v. Richardson, 397 U.S. 759, 771 (1970). While the record does not reflect any plea offer having been extended to the Petitioner, it was during this stage of the Petitioner's criminal case that he claims his attorney's performance fell below the objectively reasonable standard. Petitioner claims that counsel was ineffective by failing to advise him about the potential enhanced penalties he faced if convicted of the single felon-in-possession charge alleged against him in the indictment. According to Petitioner, had he known that he was subject to the ACCA's mandatory fifteen-year minimum sentence, and not the ten-year maximum prescribed for the violation of a section 922(g)(1) offense, he would have entered a guilty plea and foregone trial in an effort to limit his potential prison time. The thrust of Petitioner's argument is that, had he known the potential ACCA penalties, he would have tendered a guilty plea,

he would have accepted responsibility for his criminal conduct, and thereby, he would have been subjected to a recommended Guidelines range of 180 months.[15]

The Supreme Court has acknowledged that defining the duties and responsibilities of defense counsel at the plea stage is "a difficult question." Frye, 132 S. Ct. at 1408. The Court, however, has noted that "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable ...." Strickland, 466 U.S. at 688; see also Frye, 132 S. Ct. at 1408 (noting that although "the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides").

Adequate representation with regard to a proposed guilty plea requires not only investigation and study of the evidence, but also a meaningful analysis of the defendant's potential sentencing exposure. For example, the pertinent ABA Standard "contemplates that any plea offer will be assessed not only based on the maximum possible punishment in the event of a guilty

---

[15] Petitioner's ultimate Guidelines range was 188 to 235 months (TOL 33/CHC IV) and he received a sentence of 188 months. [CR Docs. 67; 71]. Had Petitioner entered a guilty plea and been awarded an acceptance of responsibility reduction, his Guidelines range would have been limited to the statutory mandatory minimum of 180 months (TOL 30/CHC IV – 135 to 168 months, increased to the fifteen-year statutory floor by operation of U.S.S.G. § 5G1.1(b)).

plea, but also by comparison to the probable sentence the judge would impose after trial." Handley v. United States, 47 F. Supp. 3d 712, 717 (N.D. Ill. 2014) (quoting ABA Standards for Criminal Justice Pleas of Guilty, Commentary on Standard 14–3.2(b)). "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." Handley, 47 F. Supp. 3d at 718 (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).

Here, Petitioner asserts that his attorney "failed to consult with [me] on the amount of incarceration time I was to be facing if I were to accept a plea bargin, nor did she inform me on the amount of incarceration time I were to be facing if I were to lose trial[.]"  [CR Doc. 62 at 1 (spelling and grammatical errors in original)].  Petitioner reiterated this assertion at the evidentiary hearing.  In response, Petitioner's trial counsel testified that she did, in fact, discuss all of the potential penalties Petitioner faced, whether he qualified for an ACCA-enhanced sentence or not.  Petitioner's trial counsel also testified that she may have mistakenly opined to Petitioner that she did not believe he qualified under the ACCA for an enhanced sentence. However, she explained that the Petitioner voiced to her his intent to proceed to trial in any event.

Having observed the witnesses testify at the evidentiary hearing, and having considered the Petitioner's allegations, recantations, and subsequent allegations, the Court finds the Petitioner's trial counsel to be the more credible witness. The Court, therefore, finds as fact that the Petitioner was properly advised about the potential enhanced penalties he faced if convicted of the single felon-in-possession charge alleged against him in the indictment. Accordingly, the Court concludes that Petitioner's trial counsel's representation did not fall below an objective standard of reasonableness as measured by prevailing professional norms. Even if Petitioner's trial counsel had failed to properly advise Petitioner, the first prong of the <u>Strickland</u> test would remain unsatisfied. The undisputed record shows that, during the Petitioner's Initial Appearance, he was fully advised by the presiding Magistrate Judge of all of the potential penalties he faced whether he qualified for an ACCA-enhanced sentence or not.[16]

Petitioner fares no better under <u>Strickland</u>'s second prong, had his claim progressed that far. In order to be removed from his present Guidelines range and to be subject to a lower recommended sentence of 180 months, the Petitioner must accept responsibility for his offense of conviction. In his

---

[16] The transcript of Petitioner's Initial Appearance is attached to this Order.

2010 letter to the Court, however, the Petitioner stated, "I am now an innocent man being sent to prison[.]" [CR Doc. 62 at 3]. Likewise, while being cross-examined at the evidentiary hearing by government counsel, Petitioner again denied that he was guilty of the offense. Maintaining his factual innocence, as he has a right to do, is inconsistent with an award for acceptance of responsibility under the Guidelines and forecloses the Petitioner from a corresponding reduction. U.S.S.G. § 3E1.1. Petitioner thus has no lawful foundation to support his argument for the imposition of a sentence based upon a lower Guidelines range. Petitioner, therefore, can show no prejudice, even if he could establish that his trial counsel provided insufficient or inaccurate legal advice. Accordingly, Petitioner's IAC claim fails the second prong of the Strickland test as well.

## CONCLUSION

Based upon the foregoing, the Court concludes that both of Petitioner's challenged convictions remain valid ACCA predicates but will issue a Certificate of Appealability regarding the issues raised by the Petitioner in challenging each such conviction. The Court further concludes that Petitioner is not entitled to any relief based upon his allegations that his trial counsel's legal assistance was constitutionally ineffective.

# ORDER

**IT IS, THEREFORE, ORDERED** that, upon reconsideration, the ACCA claim contained in Petitioner's Motion to Vacate [CV Docs. 1; 1-1; 2; 2-1; and 14] is hereby **DENIED.**

**IT IS ALSO ORDERED** that the Ineffective Assistance of Counsel claim contained in Petitioner's Motion to Vacate [CV Docs. 1 and 2] is hereby **DENIED**.

**FINALLY, IT IS ORDERED THAT,** pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court issues a Certificate of Appealability with regard to each of Petitioner's two convictions underlying his ACCA claim that he asserts are constitutionally insufficient to support his current ACCA-enhanced sentence.  See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (a Certificate of Appealability should issue if "reasonable jurists could debate whether (or, for that matter, agree that) … the issues presented were adequate to deserve encouragement to proceed further.") (internal citations and quotations omitted). The Certificate of Appealability is denied in all other respects.

**IT IS SO ORDERED.**    Signed: September 15, 2016

Martin Reidinger
United States District Judge

27